May it please the court, Ted Becker on behalf of Anderson Excavating. This case arises out of an administrative law judge's decision which found that Anderson Excavating violated sections 8A, 5, and 1 of the National Labor Relations Act in withdrawing recognition from the union and repudiating its collective bargaining obligations. That charge, which was later affirmed by the NLRB, which is the subject of this appeal, originally arose out of a charge filed by the union on July 16, 2015, wherein the union asserted Anderson is claiming they are not a signatory to any of the CBAs and they are not bound by the terms and conditions of the CBAs. Anderson's assertion of the same constitutes bad faith bargaining. There was a later amended charge in January 22, 2016, where the union once again asserted that Anderson had withdrawn recognition and repudiated the party's collective bargaining agreement. This time they asserted that it was a specific collective bargaining agreement. Our primary defense in this case to the decision of the NLRB is the fact that under 10b, the statute of limitations applicable to this, more than six months had passed prior to the filing of the charge that put the union on notice of Anderson's position repudiating any obligations under any collective bargaining agreement, regardless of what the theory. The union itself had filed suit against Anderson Excavating in March of 2014, well over a year before it filed its charge, asserting Anderson was in violation of the collective bargaining agreement by not remitting required payments under what they asserted was the collective bargaining agreement. Anderson filed an answer on May 16, 2014, which was served upon union's counsel, which indicated that the collective bargaining agreement had terminated and was no longer a valid agreement. They further alleged in their third affirmative defense that they were not bound by the agreements. That was their litigation position, and that's your case now. You're saying that was sufficient to constitute unequivocal repudiation. Yes, your honor. And I think that's ratified by virtue of the fact that the union's counsel signed a Rule 26F report, planning conference report, after receiving the answer, where counsel, as counsel does in litigation, they go through the claims and defenses and analyze it. Does it matter that conduct such as continuing to make contributions makes that statement less equivocal? I do not believe so because of the... Less unequivocal, I should say. It's unequivocal because we say unequivocally we're not bound by this agreement. If we make... But you still continue to make the payments. Some payments on a voluntary basis because of our theory as set forth by the principle in the union, which is I'm not bound by your agreements, but I'm going to pay these union guys dues for them because they're my guys and they're in the union. He may have had a misguided understanding of any obligations, but it's clear he was not remitting all the obligations. He had his own view of it, that I'm not bound by this union contract. I can send in payments for my guys, and that doesn't make me bound by the union contract. I wasn't representing him at the outset of that case. I came in a little later, and he may have had a misguided view of responsibilities. But what is clear is that they weren't paying the dues and they were saying, we're not bound by the collective bargain agreement. The Rule 26 report, the union itself says at page two of the report, the contributions were not paid pursuant to the contract and are delinquent. In response, defendant's response to that claim is that they dispute that the collective bargain agreement is current and valid. Another further defense in the planning conference, defendant claims the collective bargain agreement is not a valid contract. The unions retort to that defense, because you have to set forth your defenses in the Rule 26 report, is the collective bargain agreement remained in effect until April 30th. Or, excuse me, this is a continuation. There is not an automatic renewal provision contained in the collective bargain agreement, therefore the collective bargain agreement terminated by the expiration date. And that they did not automatically renew April 30th, 2016. The union's response is that there's an evergreen clause and it automatically renewed. The fight is right there. It's laid out in the Rule 26 report after receipt of the answer. They're going to litigate the issue of whether or not there's a collective bargain agreement. In fact, that was the subject of a summary judgment motion and a summary judgment ruling in the district court. My view of it is, is there's a simple question. What's the charge? They say that we're guilty of misconduct because we have repudiated our obligations under the collective bargain agreement. That is both in the 2015 charge in July and in the January 2016 amended charge. The question is, if that's valid, could they have done that after receipt of our answer? I submit yes. It's unequivocal that we're saying we're not bound by the collective bargain agreement. So could they have filed within six months of that date? Clearly, they have our answer. They could have used our answer as exhibit A to their charge. In fact, their narrative explanation of their first charge is basically a narrative explanation of our defenses to the contract and then their retort that, by virtue of the evergreen clause, there still is a collective bargain agreement. That's the position and fight the parties had before the United States District Court. Could the union have filed this same argument that we've repudiated our obligations after the Rule 26 planning conference report? Yes. It's even clear in the Rule 26 report because we say we're not bound. They say we're not making our payments in accordance with the agreement. And our defense to their claim that we're not making our payments in accordance with the collective bargain agreement is, we're not bound. We don't have to. You have no ability to hold us accountable. So they could have attached that document to a charge and brought a charge against us. And so I accordingly submit that you can't bootstrap it by virtue of using what they did in this case, the depositions that they took. What's your best case with similar facts indicating that the conduct that you're describing in that litigation qualifies as repudiation? I don't think that I have cited in the case specifically a litigation case. I think that the Jerry Durham drywall case cited in my brief articulates the standards appropriately. It's a little different factually. But what this court has said in that case is that when there's a notice of a clear and unequivocal repudiation, a continuing violation theory no longer applies. This case has said that, in that Jerry Durham drywall case, that a repudiation need not be an express repudiation, but instead can be manifested in a variety of ways. So I think what this court realized in the Jerry Durham drywall case at 974 Fed Second 1000, 1992 case, is that you can have repudiation a variety of different ways. It doesn't necessarily have to be in writing. It could be virtue of your conduct. Frankly, by virtue of the conduct that led to the original filing of the lawsuit in the United States District Court in March of 2014, that we weren't paying our obligations, we weren't letting them do audits, that subjected us to this claim. They could have brought that claim that we're repudiating our obligations in the collective bargaining agreement at that time. In this case, we went farther than what Durham suggests is allowed. Durham suggests that it need not be expressed. In this case, we did it by virtue of our conduct. We're not allowing them to audit. We're not remitting all the payments. We put an answer on file that says we're not bound. We participate in a Rule 26 conference that says not only are we not bound, but when you claim that we're delinquent in our contributions and we're not allowing you to do your audits and investigations that you want, we say we don't have to because we're not obligated by the CBAs or the trust agreements. Okay, question. You just said we're not making all the payments. The ALJ says, however, Anderson continued to make all the requisite payments and remittances to the union and the trust funds until May 2015. Now is that wrong? That's simply factually wrong and it's laid out in the charge by the union itself, which says that we... What's wrong about it? Because by virtue of this court's... The United States District Court, the union suit is saying that we were owed 83 with their interest, et cetera, would have been 200 plus. The District Court scaled that back down to about 11,000. This court then reduced that further down to about 2,000 because it eliminated one of the employees and left minute contributions by two other employees. So there's litigation where they're suing us for a principal amount of 83,000 plus with interest, liquidated damages. It's an astronomical number of 200 plus because it goes back eight plus years. District Court scales that way down to 11,000 principal, about 8,000 interest, 8,000 liquidated damages. This court, in a case they asked you to take judicial notice of, which we haven't disputed, scaled that down even further or remanded and took out one of the principal employees who was about 9,000. So there's about 2,000 of contributions. But regardless, they were taking position... Slow down for a second so we can understand. You're saying that the ALJ says Anderson can make all the requisite payments and remittances until May 2015. You're saying that's not right? There was $2,000 that wasn't paid before May 2015 that should have been paid? According to the District Court's decision, according to the union, it's 80,000 plus at that time. What does it matter what the union's view on it is? Well, I mean, because they're finally charged. Our view was you'd paid everything. Your defense in the prior case was we didn't know anything for these guys. No, no. Our defense in the prior case is we don't have to pay you anything. We're not obligated. The principal in his deposition says, I send in union money because these guys are union guys so I pay their dues for them. That's my deal with them. But I don't have a deal with you, union. And that's clear throughout his deposition. I mean, the bottom line is, the question is, is there a repudiation of the agreement? He may misguide it and say, well, I'm just paying for my guys because they owe it to their union. He may be wrong, but what he's consistently saying throughout is, I have no obligation to you, union, because I'm not bound by the collective bargaining agreement. I don't have to allow you- Did you argue to the board that the ALJ made a factual error? We do make an exception to that, I believe. Well, it's important whether you preserve that with the board. Did you argue to the board that the ALJ made a factual error when it said Anderson can make all the requisite payments and remittances? If I understand the law, if you didn't make that exception, it would be forfeited or waived. I think that that exception does appear in there, but again, I don't think it's material to the core defense, which is- Even if Anderson did make all the payments, you still think there was clear and unequivocal notice? Because we've said we don't have to, we're not bound. If we're a volunteer and we do it for some misguided reason, what we've said all along is we're not bound by this collective bargaining agreement. They were on notice of that. They could have filed this charge six months after our answer, six months after the Rule 26 report, or frankly, six months within the filing of their lawsuit against us saying that we're not paying and we're not adhering to our obligations. They didn't do that. I think that this is a case which is clearly barred by the limitations period, and they don't get to resurrect it by trying to point to a couple extraneous facts that are frankly inconsistent with the clear and unequivocal writing that says we're not bound. If there are no other questions, I'd like to reserve the remainder for rebuttal. Thank you, Mr. Becker. Thank you. Mr. Heller? Good morning, and may it please the Court. Joel Heller for the National Labor Relations Board. Substantial and uncontested evidence supports the Board's finding of an unlawful repudiation and withdrawal of recognition. There's no dispute that Anderson ceased remitting union dues and ceased making contractually required benefit fund contributions, and then it denied having any collective bargaining agreement with the union. So the nub of the case at this stage is whether the charge alleging that violation was timely filed. The Board was correct that it did. Judge Smith, as you were getting at in your questions earlier, despite the statements in the litigation papers and the answer in the Rule 26F report, for nearly a year thereafter, Anderson continued making contributions to the three benefit funds. It continued remitting union dues as required by the collective bargaining agreement, and it accompanied these contributions with essentially a cover letter that included a signed certification from the president of the company saying these payments were being made for work covered by a collective bargaining agreement between this employer and Local 571. So it's clear, it's well established by both Board law and this Court's law that when an employer is sending mixed signals, when there is an inconsistency between words and actions, that does not provide the requisite clear and unequivocal notice to start the running of the limitations period. Is there any prescribed methodology for stating repudiation? Are there multiple ways to do it? There are multiple ways to do it. There's no magic words. This Court has ruled in the Jerry Durham Drywall case that was being discussed that continued failure to make contractually required benefit fund contributions can constitute a repudiation. And the other case I would like to call the Court's attention to, cited in our brief, is the Twin City Pipe Fitters case, which held that, the point I was just making, when there are inconsistencies between words and actions, when an employer says it is not bound by an agreement, but yet in its actions continues to comply with the terms of the agreement, that is not clear and unequivocal notice. That was not an NLRB case, but it cites NLRB cases for that proposition. So what's your response to the appellant's argument that it expressly stated its repudiation, but continued to make payments, which seemed in conflict with the statement, not in compliance with the CBA, but out of a desire to be beneficent to its employees? Well, I just, I don't think, one, I don't think it matters what its reasons for making the payments were. I mean, there's nothing in that Twin City case, Twin City Pipe case, about saying, well, if you thought you were doing it for one reason, but nonetheless were continuing to comply with the terms of the agreement, then that's, that makes it a clear repudiation. But also it, one thing to point out, well, one, there were the certifications that went along with the payments, saying. Where is that in the appendix? Which part? The signs, the certifications? The certifications that you focused on. What page? Okay, so they're on, for example, the ones to the training fund, the payments to the That's at our appendix, 276 through 285. And for the other funds, the health and welfare fund and the pension fund, that starts at 308. And it's at the beginning of the page. There's a paragraph that says what I said, that these payments are being made for work covered by a collective bargaining agreement. It's signed by Virginia Anderson, who's the president of Anderson Excavating. But the other point to make is that when the new CBA went into effect in 2014, there was a change in the amount of pension contributions that employers were required to make. It went up from 365 an hour to 395 an hour. And after that change, the Andersons contributions to the pension fund trapped that new language. It went up from 365 to 395. You look at, again, our appendix, compare 308 with 309. That's the time period in which the new CBA went into effect. So the Andersons actions were tracking the CBA requirements, the existing ones. And when the CBA requirements changed, Andersons actions changed. So that's what I would say in response to the point that they were doing this voluntarily, that actually followed pretty closely what was in the collective bargaining agreement. And that does not provide the requisite notice to start the 10B period. What does provide that clear and unequivocal notice, as the board found, was the complete cessation of all payments in May 2015. The union filed discharge in July 2015, two months later, clearly within the six-month limitations period. Speaking for a moment about the district court litigation, which Anderson also mentions this morning, that was a different issue. The issue at stake in that litigation, it was a question of partial delinquency. The Andersons had been making payments into the three funds, but there was a dispute over whether it should have been making payments for particular employees, whether they were doing operating engineers' work and thus covered by the contract. It wasn't an issue, as in the NLRB charge, that there was a wholesale cessation of payments. So in fact, Anderson did continue making payments into the funds and did continue remitting union dues up through May 2015. So the ALJ is correct, Judge Colleton, that all of the payments had been made, with the board performing covered work. Suppose Anderson had said when it sent in the payments that we're not bound to send these in because the bargaining agreement has expired, but we're doing it just to take care of our guys. Wouldn't that be clear and unequivocal then? Because you combine that with what they said in the lawsuit, and it's clear that these are not being made pursuant to the agreement, even though they're making the full payments? So, of course, it's not the facts of this case. But if they had been doing that, hypothetically, I guess that would present a closer case of whether that was clear and unequivocal notice. I think there would be other things, because— Well, the reason I ask it is you seem to be relying on the fact that they made the payments. But I don't know if that by itself is enough, as long as it's clear that these are not payments according to the agreement. Well, they—well, a couple things in response. One is it's not just the payments into the three funds and the union dues. That's all the board cited, isn't it? No, they were also paying union wages to their employees that were in compliance with the terms of the collective bargaining agreement. And it was also the remission of union dues. We were talking about the contributions to the three funds, but they were also remitting union dues as set forth in the collective bargaining agreement. They were also participating in the union's hiring hall, which was open to employees who had an agreement. And they were also allowing themselves to be audited to ensure compliance with the obligations, again, which is something that would happen under the collective bargaining agreement. So it's for all these reasons that the board found Anderson had been bound—was bound by its conduct to the collective bargaining agreement. All I see is the statement by the ALJ that Anderson continued to make all requisite payments to the union and the trust funds. I don't see mention of the union hall or the audits. It does say more generally, and another point that—if I can find it—on page 6 of the board's decision, kind of at the bottom of that first column, he says, for nine months after the effective date of the 2014-2018 agreement, responded—abided by all of its terms. So he does speak more generally about compliance with the collective bargaining agreement. It's not in the section about the statute of limitations, but I see it. Yeah. Right. Thank you. You're welcome. The—right, and so all the payments were being made into the three funds and to the remission and to the remission of union dues were being made, really, both—in the immediate aftermath, so Anderson points to these two documents filed with the district court, its answer and the Rule 26-F report. So the answer was filed on May 4—sorry, May 16, 2014, and two days later, on May 18, Anderson filed—made contributions to the training fund, including one of these cover reports that has the signed certification. The 26-F report was filed with the court on June 17, 2014, and on June 30, 2014, so about two weeks later, they—Anderson remitted union dues to the union as required under the collective bargaining agreement. So it was both in the immediate aftermath of the two filings and also, as I said, for nearly a year thereafter that it was making these payments, and that is not the kind of The 26-F report also makes clear the point I was making earlier, that this was—that that lawsuit is about a partial delinquency rather than a wholesale cessation of funds because they talk about the dispute being whether all required contributions were made. The—Anderson itself says that it required—that required employer contributions have been paid, and the union's response is not all required contributions were paid. Also in the district court's opinion, in its findings of fact, it talks about how some payments had been made to—to—or payments had been made to cover some employees, just not all of the employees. And I just point out this is not—Anderson cited Jerry Durham-Drywall for that—for a principle about a continuing violation and whether that can—when that is timely. This is not a continuing violation case. That was not the theory the board relied on. So any language about that type of theory is—is an opposite. And unless there are further questions, the only other point I would like to make is that there is discussion in the brief, in Anderson's brief, about whether deposition testimony can be relied upon, or the deposition testimony in this case should be relied upon as—as evidence of a violation. That question is—is really not—does really—doesn't need to be addressed by this court because the board found as independent grounds for the violation that the—the cessation of payments that we've been talking about, it says even without the deposition testimony, it would find the same violations here. So without any further questions, then I would ask that the court enforce the board's order in full. Thank you. Thank you, Mr. Heller. Mr. Becker, your rebuttal. It is factually incorrect to assert that the United States District Court case was only about partial payments not being made. If you look at the complaint filed by the union and the trust, one of the demands for relief is to allow them to do an accounting. The district court ordered an accounting. That portion of the decision was affirmed by this court in the Eighth Circuit. They allege that we were refusing to allow required audits to be conducted of company payroll records to verify proper compliance and payment of proper amounts. Demand has been made upon defendants for compliance with the provision of the aforementioned agreements and said demand has been refused by this defendant. Why did we refuse to allow the audits? Because we said we were not bound. Under 10B, the question is, the 10B statute of limitations begins to run where there has been an unequivocal expression by one of the parties to repudiate the asserted contract. That's Jerry Durham Drywall. It doesn't matter that we made payments for any reason. Did we unequivocally say we were not bound by this agreement? Yes, we did. And if you look at the certification letters, do you want to speak to those? The certification letters are the testimonies. She didn't even read them. They were just forms that she signed. And I understand that you're not bound. I mean, that's part of the evidence that they used in the underlying district court case. That was part of their report. No, I'm saying if the union reads that. There's no testimony that the union was confused by that. And their case filed on March. Is the question whether the union was confused or whether as an objective matter there was clear and unequivocal notice of termination? The union has proven that there's unequivocal notice because they've said that we've repudiated our obligations refusing to comply with them in a lawsuit filed against us on March 25, 2014. And if you look at the original charge filed by the union in 2015, they mentioned nothing about payments. The repudiation is all predicated upon Anderson's position in the litigation that it was not bound. That reflects by virtue of their admission that they're not looking at payments, that they're taking their original charge. They're focused on our repudiation of litigation. That repudiation of litigation is reflected in our answer. It's why they sued us. That's why they sought relief to enforce the agreements against us and require us to make ourselves available for audit. And when we defended that, we said, we're not bound. Now, we lost that. But that was all a year before they filed their charge against us. This claim is simply was used as a pressure point in that litigation. It is stale. They were on notice of the exact same facts. The NRB doesn't answer the fundamental question is, could they have filed this charge within six months of our answer? Because their complaint says they're not abiding. We say we're not bound. They could have. And that's enough to trigger 10B and to show this claim is barred by the statute of limitations. Thank you. Thank you, Eric. Court wishes to thank both counsel for the argument you've provided to the court this morning, your answers to our questions, the briefing that you submitted, and we'll take the case under adjustment. You may be excused.